Filed 2/11/16

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JOANNA RUTH GONZALEZ,<br><br>        Defendant and Respondent. | E063113<br><br>(Super.Ct.No. INF1101673)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  William S. Lebov, Judge. (Retired Judge of the Yolo Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Michael A. Hestrin, District Attorney and Emily R. Hanks, Deputy District Attorney, for Plaintiff and Appellant.

Steven L. Harmon, Public Defender and William A. Meronek, Deputy Public Defender, for Defendant and Respondent.

1

Defendant and respondent, Joanna Ruth Gonzalez, pled guilty to one felony count of grand theft from a person (Pen. Code, § 487, subd. (c), count 3)[1] and one misdemeanor count of battery (§ 242, count 4). As part of the plea agreement, the People dropped charges of robbery (§ 211, count 1) and burglary (§ 459, count 2). The trial court sentenced Gonzalez to 36 months of formal probation on the condition she serve 365 days in a work release program, with 51 days of presentence custody and behavior credits.

The voters of California subsequently passed Proposition 47, which converted certain nonviolent offenses into misdemeanors and created a petitioning process which allows anyone serving a felony sentence for a conviction the initiative converted into a misdemeanor to request resentencing. (§ 1170.18, subd. (a).) Relevant to Gonzalez's case, Proposition 47 converted grand theft from a person into a misdemeanor where the amount of the theft was less than $950. (§ 490.2, subd. (a).) Gonzalez petitioned for resentencing, and the trial court granted the petition, deemed her conviction on count 3 a misdemeanor, vacated her sentence of formal probation, and resentenced her to summary probation.

The People appeal and contend the trial court erred in granting the petition on the grounds that: (1) Gonzalez is not eligible for resentencing because she was convicted under a negotiated plea agreement under the terms of which the People dismissed other felony counts in return for Gonzalez receiving a sentence of formal probation; and (2)

---

[1] All unlabeled statutory references are to the Penal Code.

2

Gonzalez did not carry her burden of showing her offense would now be a misdemeanor because she did not show the underlying conduct would not have constituted felony robbery and burglary, as originally charged. In the alternative, the People contend the trial court erred by refusing to find Gonzalez breached the plea agreement by petitioning for resentencing and by refusing to allow them to withdraw from the plea agreement and restore the dismissed counts.

We affirm.

## I

## FACTUAL BACKGROUND

On July 15, 2011, Gonzalez was charged with two felonies, robbery (§ 211) and burglary (§ 459). Gonzalez and prosecutors subsequently negotiated a plea agreement. On August 16, 2011, in accord with the plea agreement, prosecutors amended the complaint against Gonzalez to add a felony charge of grand theft from a person (§ 487, subd. (c)) and a misdemeanor charge of battery (§ 242), and also moved to dismiss the robbery and burglary counts. Gonzalez pled guilty to the new felony grand theft from a person and misdemeanor battery counts. Consistent with the plea agreement, the trial court sentenced Gonzalez to 36 months of formal probation on the condition she serve 314 days in a work release program, after accounting for presentence custody and behavior credits.

After Gonzalez began serving her sentence, Proposition 47 amended the Penal Code to reduce some cases of felony grand theft to misdemeanors: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by

3

theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor." (§ 490.2, subd. (a).) Proposition 47 also added a resentencing procedure allowing offenders to petition for resentencing if they are "currently serving a sentence for a conviction, whether by trial or plea," for committing a felony and "would have been guilty of a misdemeanor under" the provisions added by Proposition 47. (§ 1170.18, subd. (a).) On December 10, 2014, Gonzalez filed a petition for resentencing under section 1170.18, subdivision (a). Her petition identifies her conviction as being for a violation of section 487 and avers that she "believes the value of the check or property does not exceed $950."

On March 5, 2015, the trial court held a hearing on the petition. The prosecution conceded Gonzalez did not pose an unreasonable risk of danger to the public safety, as that phrase is defined in the statute. The prosecution also conceded the property Gonzalez took was "well below the $950 threshold." However, the prosecution contended Gonzalez was not eligible for resentencing under section 1170.18, subdivision (a) because she was convicted pursuant to a negotiated plea agreement under which the People dismissed other felony counts. The prosecution also contended that, if Gonzalez did qualify for resentencing, the court should vacate the plea agreement and allow the prosecution to pursue the original robbery and burglary counts.

The trial court granted the petition, deemed the grand theft count to be a misdemeanor, vacated the felony formal probation sentence, and resentenced Gonzalez to summary probation.

4

## II

## DISCUSSION

On November 4, 2014, the voters of California enacted "The Safe Neighborhoods and Schools Act" (hereinafter Proposition 47), which became effective the next day. (Cal. Const., art. II, § 10, subd. (a).) Proposition 47 changed portions of the Penal Code and Health and Safety Code to reduce various drug possession and theft-related offenses from felonies or wobblers to misdemeanors, unless the offenses were committed by certain ineligible offenders. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.) Section 3 of the initiative specified it was the "purpose and intent of the people of the State of California to:" "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession," "[a]uthorize consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors," "save significant state corrections dollars on an annual basis . . . [and] increase investments in programs that reduce crime and improve public safety, such as prevention programs in K-12 schools, victim services, and mental health and drug treatment." (Voter Information Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, p. 70, § 3, subds. (3), (4), (6).) The electorate also directed that Proposition 47 "shall be liberally construed to effectuate its purposes." (*Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209, 1222.)

The interpretation of a statute is subject to de novo review on appeal. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) "In interpreting a voter initiative like [Proposition 47], [the courts] apply the same principles

5

that govern statutory construction." (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) "'The

fundamental purpose of statutory construction is to ascertain the intent of the lawmakers

so as to effectuate the purpose of the law. [Citations.]'" (*Horwich v. Superior Court*

(1999) 21 Cal.4th 272, 276.) "In determining intent, we look first to the words

themselves. [Citations.] When the language is clear and unambiguous, there is no need

for construction. [Citations.] When the language is susceptible of more than one

reasonable interpretation, however, we look to a variety of extrinsic aids, including the

ostensible objects to be achieved, the evils to be remedied, the legislative history, public

policy, contemporaneous administrative construction, and the statutory scheme of which

the statute is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-

1008.) We also "'refer to other indicia of the voters' intent, particularly the analyses and

arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo*, *supra*,

at p. 685.)

> A. *Gonzalez Was Entitled to Resentencing Under Section 1170.18,*
> *Subdivisions (a) and (b).*

The People contend the plea bargain is a contract which binds Gonzalez, the

prosecution, and the court. As a result, they argue, Gonzalez is not "eligible for

resentencing under section 1170.18, subdivision (a), because she expressly agreed to

plead[] guilty to a felony charge of grand theft and to serve 36 months of formal, felony

probation." The People also contend the same principles establish the trial court did not

have the authority to resentence Gonzalez.

6

We begin our analysis with the statutory language. Proposition 47 specifically reduced certain cases of felony grand theft to petty theft. Section 487, subdivision (c) proscribes taking property *in any amount* from the body of another person. (§ 487, subd. (c).) Proposition 47 added a new provision, section 490.2, which reclassifies felony section 487, subdivision (c) grand theft violations into misdemeanors "where the value of the money, labor, real or personal property taken *does not exceed nine hundred fifty dollars* ($950)." (Italics added.)

Proposition 47 also created a petitioning procedure designed to enable convicted offenders currently serving sentences to have past felony convictions reclassified as misdemeanors and to be resentenced accordingly. New section 1170.18, subdivision (a) provides: "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing. . . ." Under section 1170.18, subdivision (b), "[t]he trial court must then determine if the petitioner is eligible for resentencing; if so, the trial court must recall and resentence the petitioner, unless it determines that doing so 'would pose an unreasonable risk of danger to public safety.'" (*People v. Scarbrough* (2015) 240 Cal.App.4th 916, 924.) Section 1170.18, subdivision (c) defines "unreasonable risk of danger to public safety" to mean "an unreasonable risk that the petitioner will commit a new violent felony" under section 667, subdivision (e)(2)(C)(iv). "By adding section 1170.18 to the Penal Code, the Proposition 47 voters

7

made this felony-to-misdemeanor reclassification available to qualifying offenders on a *retroactive* basis." (*Alejandro N. v. Superior Court*, *supra*, 238 Cal.App.4th at p. 1217, italics added.)

This new reclassification and resentencing procedure applies to Gonzalez's case. Gonzalez pled guilty to a felony violation of section 487, subdivision (c) for taking property from the body of another person without permission. At the petition hearing, the prosecutor conceded "[t]he amount in question is not really in dispute. It's well below the $950 threshold." New section 490.2, subdivision (a) reclassifies felony section 487, subdivision (c) grand theft violations involving the theft of property that does not exceed $950 as misdemeanors. Moreover, by its plain terms, Proposition 47 entitles an offender to petition for modification of her sentence and empowers the trial court to modify that sentence, whether or not the conviction was obtained by plea agreement. (*T.W. v. Superior Court* (2015) 236 Cal.App.4th 646, 653; see also § 1170.18, subd. (a) [allowing petition by any person "currently serving a sentence for a conviction, whether by trial or plea"].) Thus, under current law, Gonzalez's conviction would be a misdemeanor, and she is eligible under the unambiguous terms of section 1170.18, subdivision (a) to petition for recall of her sentence.

Subject to certain exceptions and limitations, the new statute directs the trial court to reclassify Gonzalez's conviction and resentence her. Section 1170.18, subdivision (b) provides: "If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence *shall* be recalled and the petitioner resentenced to a misdemeanor. . . ." The statutory language is mandatory. The trial court does have discretion to refuse to

8

resentence a petitioner, but only where the court "determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) The People conceded Gonzalez did not pose an unreasonable risk of danger, so the trial court was required to reclassify her conviction and resentence her.

The People do not contest that the statute purports to convert Gonzalez's felony conviction into a misdemeanor. Instead, they contend that, under California contract law, the express terms of Gonzalez's plea agreement must be enforced as written. Doing so, they argue, precludes resort to Proposition 47 if it would result in resentencing Gonzalez to anything less than the agreed punishment—formal felony probation. We disagree.

A negotiated plea agreement is a form of contract and is interpreted according to general contract principles. (*People v. Segura* (2008) 44 Cal.4th 921, 930 (*Segura*).) "The parties [to a contract] are presumed to have had existing law in mind when they executed their agreement," and in general we decline "to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement." (*Swenson v. File* (1970) 3 Cal.3d 389, 394.) However, "plea bargains in California are '"deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy."'" (*Doe v. Harris* (2013) 57 Cal.4th 64, 69 (*Harris*).) As a result, and subject to certain constitutional limitations not at issue here, the Legislature or the electorate may amend existing laws or enact new laws in a way that retroactively modifies or invalidates the terms of a plea agreement. (*Id*. at p. 70.)

9

The decision in *Harris*, *supra*, 57 Cal.4th 64 is illustrative. Defendant pleaded no contest in 1991 to an offense that subjected him to sex offender registration under former section 290. (*Harris*, *supra*, at p. 66.) At the time, the law restricted information concerning registered sex offenders from disclosure to the public. (*Ibid.*) The law changed in 2004, with the enactment of Megan's Law, which provided, among other things, that the names, addresses, and photographs of registered sex offenders would be public information. (*Ibid.*) The Legislature explicitly made the law "'applicable to every person described in this section, without regard to when his or her crimes were committed or his or her duty to register pursuant to Section 290 arose, and to every offense described in this section, regardless of when it was committed.'" (*Id.* at pp. 66-67, quoting § 290.46, subd. (m).) Defendant filed a civil complaint, contending that applying the amended law to him violated his plea agreement. (*Harris*, *supra*, at p. 67) The Supreme Court concluded that "requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction. To that extent, then, the terms of the plea agreement can be affected by changes in the law." (*Id.* at pp. 73-74.)

The voters accomplished precisely the same result by passing Proposition 47. The initiative proposed to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession." (Voter Information Pamp., Gen. Elec., *supra*, text of Prop. 47, p. 70, § 3, subd. (3).) It also sought to "[a]uthorize

10

consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors." (*Id.* at § 3, subd. (4).) The reclassification and resentencing procedure is expressly available retroactively because it applies to anyone "*currently serving* a sentence for a conviction . . . of a felony . . . who *would have been* guilty of a misdemeanor under the act that added this section." (§ 1170.18, subd. (a), italics added.) We conclude, therefore, that the voters of California expressly changed the law for reasons of public policy in a way that is intended to affect the sentences of offenders like Gonzalez, notwithstanding the plea agreement, and that Gonzalez was therefore eligible for resentencing. Moreover, because the People conceded Gonzalez did not pose an unreasonable risk of danger to the public safety, the trial court was required to grant her petition and recall her sentence.

The People contend resentencing Gonzalez frustrates their expectations in entering the plea agreement. While it is true the parties to an agreement "are presumed to have had existing law in mind when they executed their agreement" (*Swenson v. File*, *supra*, 3 Cal.3d at p. 394), it does not follow that the parties did not know such a change in the law could occur. On the contrary, as the Supreme Court explained in *Harris*, "the parties to a plea agreement—an agreement unquestionably infused with a substantial public interest and subject to the plenary control of the state—are deemed *to know and understand* that the state . . . may enact laws that will affect the consequences attending the conviction entered upon the plea." (*Harris*, *supra*, 57 Cal.4th at p. 70, italics added.)

The People argue the explicit terms of the plea agreement themselves preclude resentencing Gonzalez to anything less than formal probation. The People support their

11

contention with cases holding that the parties are bound to the terms of a plea agreement (see, e.g., *Segura*, *supra*, 44 Cal.4th at pp. 930-931), which cannot be modified without all parties' consent (see, e.g., *People v. Martin* (2010) 51 Cal.4th 75, 80). Though it is true a party to a plea agreement cannot unilaterally alter its terms, changes in the law can do so. "That the parties enter into a plea agreement . . . does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (*Harris*, *supra*, 57 Cal.4th at p. 66.) Here, the plain terms of Proposition 47, most importantly its creation of a petitioning procedure to reclassify existing convictions and reduce attendant sentences, including those obtained by plea agreements, indicate that the voters specifically intended to affect the plea agreements of defendants like Gonzalez. (§ 1170.18, subds. (a) & (b).) While the plea agreement does explicitly call for a felony sentence, it does not provide Gonzalez would not be permitted to benefit from future, retroactive statutory changes. (See *Harris*, *supra*, at p. 71.) The terms of the plea agreement therefore do not preclude section 1170.18 resentencing.[2]

---

[2] The People argue *People v. Arata* (2007) 151 Cal.App.4th 778 shows *Harris* does not apply where the change in the law would vitiate a motivating term of the plea agreement. We do not believe *Arata* requires a different result. We note that in *Harris*, the Supreme Court explicitly refused to endorse the *Arata* court's holding. (*Harris*, *supra*, 57 Cal.4th at pp. 297-298.) In any event, *Arata* is distinguishable because "defendant's plea rested in significant degree on the promise" that his offense would be expunged, and the court held retroactive application of an amendment taking away expungement would violate the defendant's constitutional right to due process. (*People v. Arata*, *supra*, 57 Cal.4th at pp. 787-788.) Here, there is no record evidence showing a felony probation sentence motivated the agreement and the People do not contend section 1170.18 implicates constitutional rights.

The Supreme Court's decision in *Segura* does not require a different result. In that case, the defendant was sentenced to a term of probation on the condition that he serve 365 days in county jail. (*Segura*, *supra*, 44 Cal.4th at p. 925.) After his release from jail, federal immigration authorities arrested him and began deportation proceedings. (*Id*. at p. 927.) Segura asked the trial court to modify his probationary jail term, after the fact, to 360 days because the reduction would benefit him in the deportation proceedings. (*Ibid.*) Segura argued the trial court could change the terms of the plea agreement under its statutory authority (§ 1203.3) to modify the conditions of probation without the consent of the prosecution. The Supreme Court rejected this view, holding the statutory authority to modify the conditions of probation do not extend to reducing an agreed-to prison sentence and do not permit the trial courts to override the terms of plea agreements. (*Segura*, *supra*, at p. 935.) This case is different. Here, the voters passed an initiative that expressly allows defendants to seek the retroactive reduction of existing convictions and sentences and expressly requires trial courts to reduce such convictions and sentences for eligible offenders. (§ 1170.18, subds. (a) & (b); see also § 1170.18, subds. (f) & (g).)

As the Supreme Court explained in *Harris*, "the Legislature, for the public good and in furtherance of public policy . . . has the authority to modify or invalidate the terms of an agreement." (*Harris*, *supra*, 57 Cal.4th at p. 70.) In this case, the voters have expressly given Gonzalez the right to seek to modify the terms of her plea agreement and have mandated that the trial court grant her petition if she qualifies, making her guilty of a misdemeanor and reducing the appropriate sentence to informal probation.

13

*B. Gonzalez Did Not Have the Burden of Proving She Would Have Been Guilty of a Misdemeanor if Tried Under Dismissed Felony Charges.*

The People contend "[e]ligibility for relief under section 1170.18, subdivision (a), necessarily requires the court to consider the underlying facts of a defendant's offenses, not simply the statute of conviction" to determine whether petitioner would have been guilty of a misdemeanor under the act that added this section. According to the People, Gonzalez therefore had the burden to establish, under all the facts of her case, that she would not have been guilty of committing felony robbery or felony burglary as originally charged. Because Gonzalez did not present such evidence, the People conclude she "failed to meet her burden to demonstrate eligibility" for resentencing. We disagree with this proposed interpretation of the statute.

Proposition 47 plainly provides a petitioning procedure whereby an offender may seek and obtain resentencing on an existing felony conviction by showing Proposition 47 reclassified the crime of conviction as a misdemeanor. Section 1170.18, subdivision (a) provides "[a] person currently serving a sentence for a *conviction*, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence . . . to *request resentencing*. . . ." (Italics added.) If a petitioner qualifies, the remedy in subdivision (b) is "the petitioner's felony sentence shall be recalled and the petitioner *resentenced* to a misdemeanor. . . ." (Italics added.) The statutory language is entirely focused on *resentencing* offenders for existing, but reclassified *convictions*. It says nothing at all about reopening dismissed felony charges

14

or requiring a petitioner to prove she would have avoided conviction of such charges to qualify for resentencing. The state's summary analysis of Proposition 47 made the focus of the statute clear to the voters: "This measure allows offenders currently serving felony sentences *for the above crimes* to apply to *have their felony sentences reduced* to misdemeanor sentences." (Voter Information Pamp., Gen. Elec., *supra*, analysis of Prop. 47 by Legis. Analyst, p. 36, italics added.) Thus, Gonzalez was entitled to resentencing because she would have been guilty of a misdemeanor under her *actual* conviction for grand theft from a person, and it is irrelevant whether, under the totality of the facts underlying her offense, she would have avoided a guilty verdict for the original robbery and burglary charges.

The People refer us to nothing in the text of Proposition 47 or the official ballot information pamphlet that even suggests a contrary result. Instead, the People rely on a treatise on Proposition 47 prepared for the courts by Judge Couzens and Presiding Justice Bigelow for the point that petitioner has the burden of proof to establish eligibility for resentencing under section 1170.18, subdivision (a). But even that authority appears to foreclose the People's argument. It makes clear the petitioner's burden would be to establish he or she "is currently serving a felony sentence for a crime that would have been a misdemeanor had Proposition 47 been in effect at the time the crime was committed." (Couzens & Bigelow, Proposition 47: "The Safe Neighborhoods and Schools Act" (Aug. 2015 rev. ed.) p. 41 <www.courts.ca.gov/documents/Prop-47-Information.pdf>.) Thus, though Gonzalez had the burden of proof as to her eligibility

for resentencing (Evid. Code, § 500), she carried it by establishing she was serving a felony sentence for an offense that Proposition 47 reclassified as a misdemeanor.

> ### C. *Gonzalez's Petition to Recall Her Sentence Does Not Entitle the People to Restore the Dismissed Felony Counts.*

The People argue that if Gonzalez "was eligible to petition for resentencing on count 3, such a request constituted a breach of her plea agreement and entitled the People to withdraw from the plea, restore the dismissed counts, and proceed to trial." We disagree.

Proposition 47 does not give the trial court a basis for reopening the case against Gonzalez. Nothing in section 1170.18 or any other provision of Proposition 47 permits a trial court to vacate a conviction or allow the prosecution to withdraw a plea agreement and reinstate dismissed counts. Proposition 47 gave the trial court the authority to determine whether petitioners qualify for resentencing and, if so, to resentence them. (§ 1170.18, subd. (b).) That statutory grant of authority is narrow, and the trial court correctly recognized the constraints on its authority.

The People base their contrary argument on *People v. Collins* (1978) 21 Cal.3d 208 and *In re Blessing* (1982) 129 Cal.App.3d 1026. Both cases are inapposite. In *Collins*, the defendant had been charged with 15 felony counts, including six counts of burglary, two counts of forcible rape, three counts of assault with intent to commit rape, and three counts of forcible oral copulation. (*People v. Collins*, *supra*, 21 Cal.3d at p. 211.) Defendant pled guilty to one count of nonforcible oral copulation, but the remaining 14 counts were dismissed under the plea agreement. (*Ibid.*) After the plea, but

16

before sentencing, the Legislature decriminalized nonforcible oral copulation, and defendant objected to the court's jurisdiction to sentence him on the basis that the statutory provision to which he had pled guilty had been repealed. (*Ibid.*) The trial court overruled the objection and sentenced him to one to 15 years in prison. (*Id*. at pp. 211-212.) On appeal, defendant asked the Supreme Court "not [to] reverse his conviction but rather 'correct' the sentence to 'no penalty.'" (*Id.* at p. 214.) The Supreme Court refused the invitation to leave the conviction intact. Instead, it reversed the conviction as being without legal basis and remanded to allow the People to revive the previously dismissed counts, holding that outcome is appropriate "[w]hen a defendant gains total relief from his vulnerability to sentence. . . ." (*Id*. at pp. 211, 213, 215.)

*Collins* does not apply in the circumstances of this case. The Legislature repealed the statute under which the *Collins* defendant had pled guilty after the trial court accepted the plea agreement but before the trial court had imposed sentence. (*People v. Collins*, *supra*, 21 Cal.3d at p. 211.) The defendant appealed, but tried to avoid attacking his conviction—and therefore the plea agreement—by seeking to set aside the sentence alone. The *Collins* court rejected this attempt and reversed defendant's conviction because the Legislature determined his offense was no longer a crime while his case was still pending. By permitting the People to withdraw from the invalidated plea agreement, the Supreme Court simply followed the rule that the People may exit a plea agreement in an ongoing case where an appellate court "in effect permit[s] [the offender] to withdraw his guilty pleas." (See *People v. Kirkpatrick* (1972) 7 Cal.3d 480, 487.)

17

The circumstances in this case are very different. Unlike the defendant in *Collins*, Gonzalez did not appeal or otherwise attack her conviction or her guilty plea. On the contrary, her conviction remains in place even after the trial court granted her petition. She merely took advantage of a process created by Proposition 47 allowing her to reduce her sentence because it was for a minor theft. As a result, the Supreme Court's decision in *Collins* does not control this case. We see no basis in that decision or in Proposition 47 for allowing the prosecution to withdraw from the plea agreement and reopen its case against Gonzalez simply because she availed herself of a collateral procedure specifically designed to allow her to reduce her sentence.

At oral argument, the People took the position that we should impute to the electorate knowledge of the holding in *Collins* and conclude it was anticipated that prosecutors would withdraw from plea agreements where a defendant's conviction resulted from a negotiated plea bargain. We disagree. It is well known that the great majority of criminal cases are resolved by negotiated plea (see, e.g., *In re Chavez* (2003) 30 Cal.4th 643, 654, fn.5; *Levenson on California Criminal Procedure* (2015 ed.) § 14:1, p. 634 ["A substantial portion of criminal cases—probably the vast majority—are disposed of through the plea negotiation process"]), yet there is no indication in the statute or the Voter Guide that Proposition 47 may result in the reopening of criminal convictions obtained by plea. The initiative makes no provision for handling such cases. Nor does the Legislative Analyst's analysis of the initiative discuss the possibility, despite containing a detailed consideration of the initiative's fiscal impact on the courts. (Voter Information Pamp., Gen. Elec., *supra*, analysis of Prop. 47 by Legis. Analyst, pp.

18

34-36.)  We conclude neither the drafters of Proposition 47 nor the electorate anticipated prosecutors would be permitted to withdraw from plea agreements.  As we have discussed above, we understand the Supreme Court's decision in *Harris* to establish the relevant background rule, which is that subsequent legislative changes in policy may alter the terms of plea agreements.  We impute knowledge of that holding to the drafters of Proposition 47 and the electorate and conclude adopting the People's position would frustrate the purpose of the statute.[3]

We disagree with the Second District, which recently held *Collins* "addressed head on the question of what happens when a change in law deprives either the People or the defendant of the benefit of the bargain of the plea agreement." (*Harris v. Superior Court* (2015) 242 Cal.App.4th 244, 250, petn. for review pending, petn. filed Dec. 28, 2015, S231489.)  Based on that understanding, the Second District held that when a defendant petitions for resentencing in a way that fundamentally alters the character of the bargain, "the People are entitled to withdraw from the plea agreement and reinstate[] . . . previously dismissed charges." (*Id.* at p. 255.)  We understand the *Collins* opinion to address what happens when a change in law invalidates a *conviction* and thereby eliminates any punishment obtained in a plea agreement.  In Proposition 47 cases, petitioners do not seek to invalidate their convictions and do not seek to eliminate their

---

[3]     We note as well that it would be impractical, if not unconstitutional, to allow prosecutors to withdraw from plea agreements, reinstate previously dismissed claims, and proceed to trial years after convictions became final.

19

punishment. Accordingly, we disagree with the Second District and conclude *Collins* has no application to Gonzalez's petition.

Interpreting *Collins* broadly to allow the parties to a plea agreement to withdraw when legislation affects the punishment in a way that can be said to deprive a party of the "benefit of the bargain" creates a conflict with the Supreme Court's decision in *Doe v. Harris*. In *Harris*, the Supreme Court held a plea agreement is "deemed to *incorporate and contemplate* . . . the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy." (*Harris*, *supra*, 57 Cal.4th at p. 70, italics added.) It follows that when legislation or an initiative changes the punishment called for by a plea agreement, the agreement is altered but remains binding on both parties. As a result, the People are *not* entitled to withdraw from the plea agreement. If *Collins* held otherwise, *Harris* overruled it. (See *Harris v. Superior* Court, *supra*, 242 Cal.App.4th at p. 262 (dis. opn. of Mosk, J.).) However, we understand the cases to be harmonious and hold that *Harris* governs this case.

The People also rely on *In re Blessing*, *supra*, 129 Cal.App.3d 1026, in which a defendant did initiate a collateral attack directed at altering his sentence. The defendant was sentenced to a total of 16 and one-third years on seven separate counts. (*Id.* at pp. 1028-1029.) On six of the counts, the defendant agreed to eight-month sentence enhancements because he used a firearm in committing the offenses. (*Id.* at p. 1029.) Subsequently, the Supreme Court held punishment for use of a firearm on consecutive subordinate offenses was not permitted for offenses like the defendant's, and the Court of Appeal concluded it could not give effect to the enhancements. (*Id.* at p. 1030.) Instead

20

of striking the enhancements, however, the court permitted the People to file in the trial court a motion to withdraw from the plea agreement.  (*Id*. at pp. 1031-1032.)

We do not find *Blessing* to be persuasive.  In the first place, we are not convinced the Second District was correct to extend the holding in *Collins* to allow the prosecutor to withdraw from a plea agreement after the conviction had become final based on a reduction of sentence.  In any event, *Blessing* is importantly different from this case.  Here, defendant is taking advantage of a policy decision made by the electorate to allow petitions to reduce certain felony sentences to misdemeanor sentences.  As we have discussed, under the Supreme Court's ruling in *Harris*, plea agreements are vulnerable to such changes in public policy enacted by the Legislature or the electorate.  (*Harris*, *supra*, 57 Cal.4th at pp. 69-70.)  The change in law that affected the *Blessing* defendant's sentence was the result of an intervening court decision, not a legislative determination of public policy.  As a result, the rule in *Harris* that statutory changes intentionally made retroactive affect the terms of a plea bargain did not control.  In Gonzalez's case, the terms of the plea agreement were properly affected by retroactive statutory changes enacted by the electorate in the furtherance of public policy.  (*Harris*, *supra*, at pp. 73-74.)

### III

### DISPOSITION

We affirm the order granting defendant's petition for resentencing under section 1170.18.

21

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:


HOLLENHORST
J.

McKINSTER
J.